[No. B005905. Second Dist., Div. Six. Aug. 14, 1985.]

In re ARTHUR W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR W., Defendant and Appellant.

COUNSEL

Richard E. Erwin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE, P. J.**—Arthur W. appeals from an order declaring him a ward of the juvenile court (Welf. & Inst. Code, § 602) following his admission of driving a vehicle while under the combined influence of alcohol and drugs. (Veh. Code, § 23152, subd. (a).) He contends that Vehicle Code section 13352.3 violates the due process and equal protection clauses of the state and federal Constitutions insofar as it provides that the driver's license of a minor shall be revoked until he reaches 18 years of age or for 1 year, whichever is longer, upon a finding by the juvenile court that such minor committed the offense of driving under the influence. (Veh. Code, § 23152.) We conclude that the statute is constitutional.[1]

### FACTS

On February 14, 1984, while appellant was 17 years of age, a petition was filed pursuant to Welfare and Institutions Code section 602 alleging, inter alia, that appellant, on February 5, 1984, "did willfully and unlawfully, while under the influence of an alcoholic beverage and a drug and under their combined influence, drive a vehicle, thereby violating Section 23152(a) of the Vehicle Code, a misdemeanor." Appellant admitted the violation of section 23152, subdivision (a), on March 5, 1984, and a disposition hearing was conducted on May 26, 1984, shortly after his 18th birthday. He was permitted to remain at home under probationary supervision and, as a consequence of his admission, revocation of his license to operate a motor vehicle became mandatory for a period of one year pursuant to section 13352.3.

### DISCUSSION

Section 13352.3 provides: "(a) Notwithstanding any other provision of law, excepting paragraphs (6) and (7) of subdivision (a) of Section 12814.6, subdivisions (b), (c), and (d) of Section 13352, and Sections 13352.2 and 13367, the department [of Motor Vehicles] shall immediately revoke the privilege to operate a motor vehicle of any person upon receipt of a duly certified abstract of the record of any court showing that the person was convicted of a violation of Section 23152 or 23153 while under 18 years of age, or upon receipt of a report of a judge of the juvenile court, a juvenile traffic hearing officer, or a referee of a juvenile court showing that the person has been found to have committed a violation of Section 23152 or 23153. [¶] (b) The term of the revocation shall be until the person reaches 18 years of age, for one year, or for the period prescribed for restriction,

---

[1]All further references are to the Vehicle Code, unless otherwise indicated.

suspension, or revocation specified in subdivision (a) of Section 13352, whichever is longer. The privilege shall not be reinstated until the person gives proof of ability to respond in damages as defined in Section 16430."[2] Hence, although appellant was a first-time offender, the one-year revocation of his driving privilege became mandatory because he committed the offense shortly before his 18th birthday. Had appellant violated the same law on or after his 18th birthday, he would have been subject to suspension of his driving privilege for a maximum of six months. Furthermore, if granted probation as an adult, he would have been eligible to attend a drug and/or alcohol education program. If admitted to such a program, his privilege to operate a motor vehicle might have been restricted to necessary travel to and from such program, as well as his place of employment, for as few as 90 days. (§§ 23160, 23161.)

Section 13352.3 was added by statute, introduced as Assembly Bill No. 624 during the 1983 regular legislative session, and established minimum periods of license revocation for persons under 18 years of age which are substantially longer than the minimum periods of restriction, suspension or revocation imposed upon adults convicted of the same offenses.[3] ▮ It is contended that minor offenders, such as appellant, are deprived of due process and equal protection of the law because they suffer a loss of their driving privilege greater than the loss imposed upon adult offenders who are convicted of the same offense.

At the outset it is necessary to establish the correct standard of review to which the challenged license revocation law must be subjected. ▮ In analyzing the constitutionality of laws challenged under the equal protection clauses of the United States and California Constitutions, a two-tier approach has traditionally been employed, depending upon the interest affected or the classification involved. (*Dunn* v. *Blumstein* (1972) 405 U.S. 330, 335 [31 L.Ed.2d 274, 280, 92 S.Ct. 995]; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10]; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 15-16 [95 Cal.Rptr. 329, 485

---

[2]Section 13352 sets forth increasing periods of restriction, suspension, and revocation of driving privileges upon first, second, and subsequent convictions for offenses involving driving while under the influence of alcohol and/or drugs which occur within specified time periods.

[3]Prior to the enactment of section 13352.3, the law provided that "[f]or purposes of the suspension or revocation of any driver's license issued to a minor, the department [of Motor Vehicles] shall not provide any lighter penalty than would be given to an adult under similar circumstances." (§ 13367.)

Hence, a minor found to have driven under the influence of alcohol and/or drugs was subject to the restriction, suspension, or revocation of his driver's license for specified periods varying from ninety days to five years, depending upon the number of prior offenses within five years and conditions of probation imposed by the court, in the same manner as a similarly situated adult. (Legis. Counsel's Dig. of Assem. Bill No. 624 (1983 Reg. Sess.).)

P.2d 529, 46 A.L.R. 3d 351].) If a legislative measure adversely impinges upon either a "fundamental right" or involves a "suspect classification," it will be subjected to a "strict scrutiny" test under which " 'the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose.' [Citation.]" (*Id.,* at pp. 16-17, original italics.) In all other cases, the less stringent "rational relationship" test is applied. (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 16.) Under the latter standard, legislation is invested with a presumption of constitutionality and distinctions drawn by it must merely " 'bear some rational relationship to a conceivable legitimate state purpose.' [Citation.]" (*Ibid.;* see also *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 417 [205 Cal.Rptr. 576].) "Moreover, the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it.*" (*D'Amico* v. *Board of Medical Examiners, supra,* at p. 17, original italics.)

■ A similar approach is employed in passing upon substantive due process challenges to legislative measures. A compelling state interest in a regulation need not be established unless the interest involved is "protected by specific guarantee of the United States Constitution" (*Spurlock* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 821, 830 [82 Cal.Rptr. 42]), affects "the integrity of the political process" (*ibid.*), or impacts "most heavily upon a discrete and insular minority."[4] (*Ibid.;* see also *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 79-80, fn. 9 [177 Cal.Rptr. 566, 634 P.2d 917].) In the absence of such factors, "a Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal."[5] (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512]; see also *Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 78.)

Appellant complains that the statute is unconstitutional because he and other minor offenders are disparately treated solely because of their age.

---

[4]Section 13352.3 clearly does not affect "the integrity of the political process," and appellant does not contend otherwise.

[5]Appellant does not attack the procedural fairness of section 13352.3 under the due process clause, nor could he reasonably do so in light of the Supreme Court's recent ruling in *Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367 [211 Cal.Rptr. 748, 696 P.2d 141]. In that case, the Supreme Court upheld those provisions of section 13352 which mandate revocation of driving privileges by the Department of Motor Vehicles upon a third conviction of driving under the influence within five years, without a prerevocation hearing.

The court noted that a driver could contest the accuracy of Department of Motor Vehicle records at a postrevocation administrative hearing pursuant to section 14101 (*id.,* at p. 380, fn. 8), and found this procedural safeguard "adequate to satisfy the demands of the Fourteenth Amendment due process clause as well as the demands of article I, sections 7 and 15 of the California Constitution." (*Id.,* at p. 380.)

■    However, "age is not recognized under either the California or the federal Constitution as a 'suspect' classification . . . ." (*Rittenband* v. *Cory, supra,* 159 Cal.App.3d at p. 418; see also *Massachusetts Bd. of Retirement* v. *Murgia* (1976) 427 U.S. 307, 313 [49 L.Ed.2d 520, 525, 96 S.Ct. 2562].) "[A] suspect classification is one marked by an immutable characteristic grounded in the accident of birth and resulting in a stigma of inferiority and second class citizenship. . . . While the age of each of us at any particular time is the certain result of the date of our birth, the progression through the stages of life is simply a natural process to which every one of us is subject. As a result, no member of an age group labors under any disability not encountered by every other member of society at some point in time." (*Kubik* v. *Scripps College* (1981) 118 Cal.App.3d 544, 551 [173 Cal.Rptr. 539].)

The terms "discrete and insular minority" and "suspect classification" are frequently employed interchangeably. The former term is commonly used to denote an immutable classifying trait, over which a person has no control, which places the person with such trait in a historically disadvantaged position. (See *Darces* v. *Woods* (1984) 35 Cal.3d 871, 891-893 [201 Cal.Rptr. 807, 679 P.2d 458]; see also *Plyler* v. *Doe* (1982) 457 U.S. 202, 223 [72 L.Ed.2d 786, 803, 102 S.Ct. 2382]; *University of California Regents* v. *Bakke* (1978) 438 U.S. 265, 288-291, fn. 28 [57 L.Ed.2d 750, 769-771, 98 S.Ct. 2733]; *Johnson* v. *Robison* (1974) 415 U.S. 361, 374, fn. 13 [39 L.Ed.2d 389, 402-403, 94 S.Ct. 1160].) ■ " 'Aliens as a class are a prime example of a "discrete and insular" minority . . . for whom such heightened judicial solicitude is appropriate.' [Citation.]" (*Bernal* v. *Fainter* (1984) 467 U.S. 216, 219, fn. 5 [81 L.Ed.2d 175, 180, 104 S.Ct. 2312].) ■    For the reasons previously articulated, persons under 18 years of age are neither a "discrete and insular minority" nor a "suspect classification," and strict judicial scrutiny is not required merely because section 13352.3 provides different treatment based solely upon the age of the offender.

The right to operate a motor vehicle is not protected by a specific constitutional guarantee and appellant does not so contend.    ■    Rather, he argues that the right to drive has been recognized as "fundamental" for purposes of selecting the standard of judicial review of an administrative decision to suspend or revoke a driver's license. (See *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395-398 [188 Cal.Rptr. 891, 657 P.2d 383].) However, while the loss of driving privileges does impinge upon interests "sufficiently important 'to the individual in the life situation' to warrant *independent review of a quasi-judicial administrative decision* suspending or terminating such right[,] [i]t does not follow . . . that legislative measures regulating or limiting the possession

of a driver's license are subject to strict judicial scrutiny." (*Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 83, original italics; see also pp. 80-81, fn. 11; see *Mackey* v. *Montrym* (1979) 443 U.S. 1, 18-19 [61 L.Ed.2d 321, 334-335, 99 S.Ct. 2612]; *Berlinghieri* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at pp. 396-397.) Indeed, California courts have uniformly rejected the application of the "strict scrutiny" test to due process challenges mounted against other license revocation measures. (*Hernandez* v. *Department of Motor Vehicles, supra,* at p. 79; *Spurlock* v. *Department of Motor Vehicles, supra,* 1 Cal.App.3d at p. 830.) Hence, since the right to drive is not protected by a specific constitutional guarantee and a "fundamental right" is not adversely affected, section 13352.3 is presumed constitutional and our review is limited to consideration of whether the statute is rationally related to a proper legislative goal. (See *Hale* v. *Morgan, supra,* 22 Cal.3d at p. 398; *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d at p. 16; *Spurlock* v. *Department of Motor Vehicles, supra,* 1 Cal.App.3d at p. 830.)

A report on Assembly Bill No. 624, prepared for the Assembly Committee on Criminal Law and Public Safety, contained the following comments regarding the reasons underlying the bill: "Proponents of the bill contend that driving under the influence is a serious problem among teenagers. They point out that in California in 1981, 2,056 drivers under 18 years of age were involved in fatal and injury accidents after they had been drinking and that 13,072 minors between the ages of 16 and 18 were apprehended for driving under the influence. [¶] Proponents also contend that teenagers who have been drinking tend to be involved in fatal accidents more often than adults who have been drinking and that, although teenagers comprise only about 9% of all licensed drivers, they account for about 17% of all motor vehicle-related fatalities. [¶] Proponents also point out that driving while under the influence is a more serious crime for minors in that drinking itself is illegal for persons under 21 and that a driver's license for persons under 18 years of age is a special privilege." (Assem. Com. on Crim. Law and Pub. Saf. Rep. on Assem. Bill No. 624 as amended Apr. 4, 1983 (1983 Reg. Sess.).) These concerns were reiterated in reports of the Senate Committee on the Judiciary, the Senate Republican Caucus Judiciary Committee and the Senate Democratic Caucus Policy Committee prepared in connection with subsequent versions of the bill. (Sen. Com. on Jud. Rep. on Assem. Bill No. 624 as amended July 6, 1983 (1983 Reg. Sess.); Sen. Dem. Caucus Policy Com. Rep. on Assem. Bill No. 624 as amended Aug. 16, 1983 (1983 Reg. Sess.); Sen. Rep. Caucus Jud. Com. Rep. on Assem. Bill No. 624 as amended Aug. 31, 1983 (1983 Reg. Sess.); Sen. Dem. Caucus Policy Com. Rep. on Assem. Bill No. 624 as amended Sept. 1, 1983 (1983 Reg. Sess.).)

The legislative history of Assembly Bill No. 624 clearly discloses a purpose to reduce the incidence of traffic injuries and fatalities caused by intoxicated drivers under 18 years of age by removing from the streets and highways such drivers found to have been driving while intoxicated. ■
The reduction of alcohol- and drug-related traffic injuries and fatalities is, without question, a proper legislative goal. As the United States Supreme Court has observed, "[t]he increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield. The States, through safety measures; modern scientific methods, and strict enforcement of traffic laws, are using all reasonable means to make automobile driving less dangerous." (*Breithaupt* v. *Abram* (1957) 352 U.S. 432, 439 [1 L.Ed.2d 448, 453, 77 S.Ct. 408], fn. omitted; see also *Mackey* v. *Montrym, supra,* 443 U.S. at p. 18 [61 L.Ed.2d at pp. 334-335]; *Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 77.) "Over 30 years ago . . . [the Supreme Court]—while acknowledging the great importance of driving—at the same time explicitly emphasized that 'it is . . . well established . . . that usage of the highways is subject to reasonable regulation for the public good. . . .' [Citations.]" (*Hernandez, supra,* at pp. 78-79.)

■ Accordingly, the sole remaining inquiry is whether the imposition of longer periods of license revocation for intoxicated drivers *under 18 years of age* bears a rational relationship to the Legislature's legitimate interest in preventing slaughter on the highways. Recent motor vehicle traffic fatality and accident statistics compel the conclusion that it does.

In California in 1983, 3.2 percent of all intoxicated drivers involved in fatal or injury accidents were under 18 years of age, although persons under age 18 comprised only 1.9 percent of all licensed drivers in the state. (1983 Annual Rep. of Fatal and Injury Motor Vehicle Traffic Accidents, Cal. Highway Patrol, p. 27; Dept. of Motor Vehicles Estimated Licenses Outstanding by Age and Sex as of Dec. 31, 1983.) Similarly, although only 1.7 percent of all licensed drivers in California were under 18 years of age in 1984, 3.3 percent of the intoxicated drivers involved in injury or fatal accidents were in that age group. (1984 Annual Rep. of Fatal and Injury Motor Vehicle Traffic Accidents, Cal. Highway Patrol, p. —; Dept. of Motor Vehicles Estimated Licenses Outstanding by Age and Sex as of Dec. 31, 1984.) Section 13352.3 appears rationally designed to promote the legislative goal of reducing the number of fatal and injury motor vehicle traffic accidents because it targets for longer periods of license revocation the class of intoxicated drivers under 18 years of age—a group which is responsible for a disproportionate share of fatal and injury accidents by comparison to the class of intoxicated drivers 18 years of age or older.

Appellant asserts that the license revocation provisions of section 13352.3 are particularly unfair as applied to a minor whose offense is committed shortly before his or her 18th birthday. However, the same argument has been made with respect to other statutes which disproportionately curtail the rights of these persons in comparison to adults, such as statutes requiring a lengthier waiting period before juvenile arrest and detention records may be expunged (compare Welf. & Inst. Code, § 781 with Pen. Code, § 1203.4), and statutes permitting minors to be placed under probationary supervision for longer periods of time than adults granted probation for similar offenses (Welf. & Inst. Code, §§ 607, 731). Yet these arguably discriminatory provisions have withstood constitutional challenges on grounds similar to those advanced by appellant. (See, e.g., *T.N.G.* v. *Superior Court* (1971) 4 Cal.3d 767 [94 Cal.Rptr. 813, 484 P.2d 981] [Welf. & Inst. Code, §§ 602, 781]; *In re John R.* (1979) 92 Cal.App.3d 566 [155 Cal.Rptr. 78] [Welf. & Inst. Code, §§ 607, 731]; *In re S.A.* (1970) 6 Cal.App.3d 241 [85 Cal.Rptr. 775] [Pen. Code, § 1203.4]; see also *In re Todd L.* (1980) 113 Cal.App.3d 14 [169 Cal.Rptr. 625] [upholding imposition of conditions of wardship for a juvenile which could not be imposed as a condition of probation upon an adult found to have committed the same offense]; *In re Wayne J.* (1979) 97 Cal.App.3d 776 [159 Cal.Rptr. 106] [upholding as constitutional probationary supervision for a minor for possession of less than one ounce of marijuana].)

The fact that offenders who only recently have achieved adulthood, prior to arrest, may benefit from the more lenient license restriction and suspension provisions applicable to other adult offenders does nothing to detract from the constitutionality of section 13352.3. ■ To pass constitutional muster under the rational relationship test, a law " ' " "need not be in every respect logically consistent with its aims . . . . It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." ' " ' " (*Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 79, fn. omitted.)[6]

---

[6]In *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916], Justice Mosk, in a concurring opinion, suggested that an intermediate level of review be adopted "when rights important—but not 'fundamental'—are denied, or when a classification sensitive—but not 'suspect' is made." (*Id.,* at p. 601.) In such cases, it was proposed that a legislative classification should only be upheld if it "*significantly* further[s] *important* state interests." (*Ibid.,* original italics.) The conclusion that section 13352.3 is constitutional would remain unchanged were this court to analyze the statute under the intermediate standard of review proposed.

The safety of the public thoroughfares is, without question, an "important" state interest. " ' " "The use of the public highways by motor vehicles, with its constant dangers, renders the reasonableness and necessity of regulation apparent. . . . *Any appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process.*" ' " " (*Hernandez* v. *Department of Motor*

In addition, in order to present a meritorious claim under the equal protection clauses of the state and federal Constitutions, it is necessary to establish that the license revocation provisions of section 13352.3 accord dissimilar treatment to *persons similarly situated with respect to the legitimate purpose of the law. (In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549].) ■■■ The rights of minors are not coextensive with those of adults, insofar as the privilege to drive upon public streets and highways is concerned. For example, a person under 18 years of age may not ordinarily obtain a California driver's license unless his or her application is signed and verified by a parent, guardian, or other person having legal custody.[7] (§§ 17700, 17701.) Persons who sign and verify such applications are civilly liable for damages proximately caused by the negligent or wrongful act or omission of the minor in driving a motor vehicle. (§§ 17707, 17708, 17709.) The minor's license is subject to immediate cancellation in the event that the person who signed and verified the application requests to be relieved of liability, dies or loses custody of the minor. (§§ 17711, 17712.) Moreover, no driver's license may be issued to a person under 18 years of age unless he or she first satisfactorily completes an approved course in driver education, or 6 hours or more of behind-the-wheel instruction by a licensed driving school or instructor, and, under no circumstances, may a person under 18 years of age be employed for compensation for the purpose of driving a motor vehicle on the highways. (§§ 12507, 12512, 12517.) Such enactments represent a legislative determination that, as a class, "minors have not that discretion and judgment which entitles them to unrestrained permission to operate [motor] vehicles upon the public thoroughfares . . . ." (*Buelke* v. *Levenstadt* (1923) 190 Cal. 684, 688 [214 P.42]; see also *Beamon* v. *Department of Motor Vehicles* (1960) 180 Cal.App.2d 200, 208 [4 Cal.Rptr. 396].)

Furthermore, the license revocation consequences of section 13352.3 are imposed only upon a finding that a minor has violated the criminal laws which prohibit driving a vehicle while intoxicated. One paramount purpose of the juvenile court law is "to provide for the protection and safety of . . . each minor under the jurisdiction of the juvenile court . . . ." (Welf. & Inst. Code, § 202.) The longer period of license revocation imposed upon

---

*Vehicles, supra,* 30 Cal.3d at p. 79, original italics.)
　　Furthermore, the license revocation provisions of section 13352.3 "significantly" further highway safety by removing from the highways an identifiable group of drivers substantially more likely to be involved in injury and fatal motor vehicle accidents when intoxicated than adult drivers.

　　[7]If a minor under 18 years of age is married, the application may be signed and verified by the adult spouse of the minor, or by the parents of either spouse, or, in lieu of such signature, the minor may file proof of financial responsibility. (§§ 16030, 17702.)

minor offenders serves an additional state interest in the protection and safety of the minor, as well as the public at large, by removing from the streets and highways those children under 18 years of age who have clearly demonstrated the lack of judgment necessary to safely operate a motor vehicle. Thus, intoxicated drivers under 18 years of age are not similarly situated to adults, and license revocation pursuant to section 13352.3 does not deprive such persons of equal protection of the law. (Cf. *In re Steven R.* (1982) 131 Cal.App.3d 95 [182 Cal.Rptr. 384] [upholding as constitutional a prosecutor's policy of refusing to negotiate dispositions with minors charged with driving while intoxicated].)

Appellant's substantive due process claim must fail for similar reasons. While a minor is clearly entitled to the protection of due process of law whenever the state initiates deprivatory action, it is equally well settled that the due process rights of minors are not coextensive with those of adults. (*In re Roger S.* (1977) 19 Cal.3d 921, 928 [141 Cal.Rptr. 298, 569 P.2d 1286].) "Minors' rights are often legitimately curtailed when the restriction serves a state's interest in promoting the health and growth of children." (*Gordon J.* v. *Santa Ana Unified School Dist.* (1984) 162 Cal.App.3d 530, 538 [208 Cal.Rptr. 657].) Since intoxicated drivers under 18 years of age are substantially more likely to be involved in injury and fatal motor vehicle accidents than their adult counterparts, revocation of their driving privilege in a manner dissimilar to that for adults for the offense of driving under the influence does not violate due process of law. (See *Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 79.)

Inasmuch as section 13352.3 bears a rational relationship to the legitimate goal of reducing fatal and injury traffic accidents involving youthful intoxicated drivers, the statute is constitutional.

The order of wardship is affirmed.

Gilbert, J., and Abbe, J., concurred.